# United States Court of Appeals
# for the Federal Circuit

---

**BOOMERANG TUBE LLC, TMK IPSCO, ENERGEX TUBE, A DIVISION OF JMC STEEL GROUP, WELDED TUBE USA INC., UNITED STATES STEEL CORPORATION,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, JUBAIL ENERGY SERVICES COMPANY, DUFERCO SA,**
*Defendants-Appellees*

---

2016-1554, 2016-1561

---

Appeals from the United States Court of International Trade in Nos. 1:14-cv-00196-TCS, 1:14-cv-00201-TCS, Chief Judge Timothy C. Stanceu.

---

Decided: May 8, 2017

---

ROGER BRIAN SCHAGRIN, Schagrin Associates, Washington, DC, argued for plaintiffs-appellants Boomerang Tube LLC, TMK IPSCO, Energex Tube, Welded Tube USA Inc. Also represented by JOHN W. BOHN, CHRISTOPHER CLOUTIER, PAUL WRIGHT JAMESON, JORDAN CHARLES KAHN.

JONATHAN GORDON COOPER, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC, argued for plaintiff-appellant United States Steel Corporation. Also represented by DEBBIE LEILANI SHON, JON DAVID COREY, KELSEY RULE, PHILIP CHARLES STERNHELL.

EMMA BOND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by BENJAMIN C. MIZER, JEANNE E. DAVIDSON, CLAUDIA BURKE; HEATHER NOEL DOHERTY, United States Department of Commerce, Washington, DC.

NANCY NOONAN, Arent Fox, LLP, Washington, DC, argued for defendants-appellees Jubail Energy Services Company, Duferco SA. Also represented by JOHN M. GURLEY, DIANA DIMITRIUC QUAIA.

_____

Before REYNA, HUGHES, and STOLL, *Circuit Judges.*

REYNA, *Circuit Judge.*

Boomerang Tube LLC and United States Steel Corporation appeal a decision from the U.S. Court of International Trade, which affirmed the U.S. Department of Commerce's final determination in an antidumping investigation. The parties failed to exhaust their arguments before Commerce, and the Trade Court abused its discretion in waiving the exhaustion requirement in this case. Therefore, we vacate and remand.

BACKGROUND

A. Investigation and Preliminary Determination

On July 29, 2013, Commerce initiated an investigation into whether oil country tubular goods ("OCTGs") from Saudi Arabia and other countries imported into the United States from July 1, 2012 through June 20, 2013

were sold for less than fair value—*i.e.*, dumped.[1] OCTGs are a family of seamless rolled steel products consisting of drill pipes, casing, and tubing used in connection with oil and gas production. Commerce selected Duferco SA, the largest of fourteen known Saudi Arabian OCTGs exporters, to serve as the sole mandatory respondent in the investigation. Duferco is the exporter of record for OCTGs produced by Jubail Energy Services Company ("JESCO").

In August 2013, the Trade Commission preliminarily determined that there is a reasonable indication that a U.S. domestic industry was materially injured by reason of sales in the United States of OCTGs from Saudi Arabia at less than fair value.[2] In February 2014, Commerce issued its preliminary determination that OCTGs from Saudi Arabia were being, or were likely to be, sold in the United States at less than fair value. Commerce preliminarily calculated an anti-dumping duty margin of 2.92 percent *ad valorem*.[3]

In its preliminary determination, in accordance with 19 C.F.R. § 351.401(f), Commerce *sua sponte* determined to treat Duferco SA and three of its affiliates as a single entity ("Duferco entity") because it found a significant potential for manipulation of price or production. After

---

[1] *Initiation of Antidumping Duty Investigations*, 78 Fed. Reg. 45,505 (Dep't of Commerce July 29, 2013).

[2] *Certain Oil Country Tubular Goods from India, Korea, the Philippines, Saudi Arabia, Taiwan, Thailand, Turkey, Ukraine, and Vietnam: Determinations*, 78 Fed. Reg. 52,213 (Dep't of Commerce Aug. 22, 2013).

[3] *Certain Oil Country Tubular Goods from Saudi Arabia: Preliminary Determinations of Sales at Less Than Fair Value, and Postponement of Final Determination*, 79 Fed. Reg. 10,489, 10,490 (Dep't of Commerce Feb. 24, 2014).

collapsing the Duferco affiliates into a single entity, Commerce further determined that Duferco is affiliated with JESCO, the producer of the subject OCTGs imported into the United States. This affiliation was based on the fact that the Duferco entity owns ten percent of JESCO. JESCO was not included in the Duferco entity, nor were several other Duferco SA affiliates. J.A. 6628−29 & n.26.

JESCO participated in the antidumping duty investigation as a voluntary respondent. Early in the investigation, Commerce asked JESCO to submit data regarding its third-country sales of OCTGs for potential use in calculating normal value. JESCO responded by providing data of sales made in Colombia to an unaffiliated customer and an affiliated distributor.

In calculating normal value, Commerce concluded that JESCO had no viable home market sales, because its home market sales either failed the arm's length test or were made below cost of production. Commerce determined to construct normal value under 19 U.S.C. § 1677b(e)(2)(B)(iii), which provides for using "any other reasonable method." Commerce calculated a profit value for JESCO's constructed value ("CV") using the profit figures in the public 2012 audited financial statements of Saudi Steel Pipes Company ("Saudi Steel"). J.A. 6630−33, 6640−41.

### B. Party Briefing to Commerce

Following Commerce's preliminary determination, interested parties submitted briefs on, among other issues, the profit value used in CV for JESCO. Boomerang, JESCO, and Duferco submitted case and rebuttal briefs. U.S. Steel did not.

Boomerang's case brief challenged Commerce's reliance on the financial statements of Saudi Steel, arguing that the data were unreliable because the company is more of a pipe line producer than an OCTGs producer.

Boomerang suggested that Commerce use profit data from Tenaris S.A., a multinational corporation that produces OCTGs in several countries, or profit data of the U.S. producers of OCTGs. Data for each of those options were added to the record after Commerce's preliminary determination.

Duferco's and JESCO's case briefs contended that Commerce should continue using the financial statements of Saudi Steel, or, alternately, the financial statements of Arabian Pipes Company, a Saudi entity. As another option, Duferco and JESCO suggested that Commerce use profit data from JESCO's sales to its affiliated Colombian distributor. These data were placed in the investigation record prior to the preliminary determination.

Boomerang submitted a rebuttal brief that argued against using JESCO's Colombia sales: "[JESCO] suggests that the Department can use the profits on JESCO's sales to Colombia for CV profit. Again, this is sort of a mini-alternative (i) scenario, and there is no basis in the statute to use such a method to calculate CV profit." J.A. 7033 (redactions omitted). Significantly, Boomerang did not argue that the affiliated Colombian distributor was a member of the Duferco entity, or that the Colombian sales were intra-company sales.

### C. Commerce's Final Determination

Commerce published its final determination in July 2014, again concluding that Saudi OCTGs were being dumped in the U.S. and recalculating the antidumping duty margin of 2.69 percent *ad valorem*.[4] With respect to CV profit, Commerce determined that JESCO's sales to

---

[4] *Certain Oil Country Tubular Goods from Saudi Arabia: Final Determination of Sales at Less Than Fair Value*, 79 Fed. Reg. 41,986 (Dep't of Commerce July 18, 2014) (final determination).

Colombia were "the best available option" and explained why the Colombian transactions were preferable. J.A. 7140–46.

Following issuance of the final determination, JESCO identified a ministerial error in Commerce's calculation of CV profit; specifically, Commerce failed to deduct certain movement expenses. Correcting this error lowered JESCO's CV profit, significantly reducing the dumping margin for JESCO from 2.69 percent to the *de minimis* value of 1.37 percent. Commerce issued an amended negative final determination that imposed no antidumping duties on imports of OCTGs from Saudi Arabia and terminated its investigation.[5]

D. Appeal to the U.S. Court of International Trade

Boomerang and U.S. Steel appealed Commerce's final determination to the Trade Court. The sole issue raised on appeal was whether Commerce erred in its use of JESCO's sales to the affiliated Colombian distributor to calculate CV profit. Plaintiffs argued that JESCO's sales to the Colombian distributor were intra-company transfers within the Duferco entity and were, therefore, not an appropriate basis to construct CV profit. Duferco and JESCO countered that plaintiffs failed to exhaust their administrative remedies with respect to this argument because it was not made during the dumping investigation and was raised for the first time on appeal before the Trade Court.

The Trade Court affirmed Commerce's determination and found that Boomerang and U.S. Steel did not fail to

---

[5]     *Amended Final Determination and Termination of the Investigation of Sales at Less Than Fair Value: Certain Oil Country Tubular Goods from Saudi Arabia,* 79 Fed. Reg. 49,051 (Dep't of Commerce Aug. 19, 2014).

exhaust their administrative remedies.[6]  The Trade Court reasoned that applying the exhaustion requirement would be unwarranted in this case because the parties did not have any indication that Commerce was considering using the Colombian sales until it issued the final determination.  The Trade Court rejected the argument that U.S. Steel and Boomerang were on notice that Commerce might use the Colombian transactions because this argument was made in JESCO's case brief.  According to the Trade Court, adopting that argument would require parties to predict among proposed substitutes in an opposing brief, and preemptively defend against it:

> Denying relief on exhaustion grounds would require the court to conclude that plaintiffs should have predicted that Commerce might accept JESCO's proposal to use sales by Duferco SA/JESCO to Colombia to calculate CV profit and should have raised, in their case briefs, potential arguments against that possibility.  The court declines to require such speculation.  The court concludes, instead, that petitioners did not have a full and fair opportunity during the investigation to challenge the Department's method of determining CV profit.  Therefore, the court adjudicates on the merits the claims of all plaintiffs in this litigation.

J.A. 10.

The Trade Court further decided that substantial evidence supports Commerce's treatment of the Colombian distributor as a separate entity.  The Trade Court characterized Commerce's decision as an implicit determination that the Colombian distributor is not part of the Duferco

---

[6]   *Boomerang Tube LLC v. United States*, 125 F. Supp. 3d 1357 (Ct. Int'l Trade 2015).

entity, a determination supported by substantial evidence. J.A. 14−18. As a result of the Trade Court's decision, the *de minimis* dumping margin remained in effect.

Boomerang and U.S. Steel appeal. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## STANDARD OF REVIEW

This court reviews decisions of the Trade Court de novo, applying the same standard of review applied by the Trade Court in reviewing the administrative record before Commerce. *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013). Thus, this court will uphold Commerce's determination unless it is unsupported by substantial evidence in the record or otherwise not in accordance with law. *Id.*

We review a decision of the Trade Court on whether to require exhaustion in a particular case for abuse of discretion. *See Corus Staal BV v. United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007). Thus, we will reverse only if the Trade Court erred in interpreting the law, exercised its judgment on clearly erroneous findings of material fact, or made an irrational judgment in weighing the relevant factors. *See Int'l Custom Prods., Inc. v. United States*, 843 F.3d 1355, 1358 (Fed. Cir. 2016).

## DISCUSSION

On appeal, Boomerang and U.S. Steel argue that Commerce erred when it failed to collapse the affiliated Colombian distributor into the Duferco entity. The government, JESCO, and Duferco respond that Boomerang and U.S. Steel failed to exhaust their administrative remedies because they did not argue before Commerce that the Colombian distributor should be collapsed into the Duferco entity. Boomerang and U.S. Steel argue that the Trade Court acted within its discretion in finding that the exhaustion requirement did not apply in this case.

By statute, the Trade Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). We have explained that this statutory mandate "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal*, 502 F.3d at 1379; *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement.").

Here, the Trade Court found that Boomerang and U.S. Steel exhausted their administrative remedies because they were not required to speculate from positions advanced in briefs which position Commerce would adopt, thereby depriving them of a full and fair opportunity to present their argument. According to the Trade Court, Boomerang and U.S. Steel did not have notice that Commerce might use data relating to JESCO's third party transaction with the affiliated Colombian distributor to calculate CV profit. We disagree.

The Trade Court's decision constitutes an abuse of discretion for two reasons. First, the decision is legally erroneous to the extent it stands for the proposition that Commerce must expressly notify interested parties any time it intends to change its methodology between its preliminary and final determinations, despite the inclusion of the relevant data in the record and the advancement of arguments related to that data before Commerce. There is no support for such a requirement.

Second, the decision is based on a clearly erroneous finding of material fact that the parties did not have an opportunity to raise their single entity objection to using the Colombian transactional data before Commerce. It is undisputed that the data regarding JESCO's transactions with the affiliated distributor were in the record prior to

Commerce's preliminary determination. At that point, U.S. Steel and Boomerang either knew or should have known that Commerce may consider those data during its calculations, especially given that the basis of CV profit was at issue. It is also undisputed that, in its case brief, JESCO suggested using those data to calculate CV before Commerce. At that point, Boomerang and U.S. Steel had notice of the potential that Commerce might use the Colombian data to calculate JESCO's CV profit. Indeed, Boomerang's rebuttal brief to Commerce reveals that it recognized JESCO's suggestion to use the Colombian data for CV profit and that Boomerang objected to that approach. Unfortunately for Boomerang, its rebuttal brief made no mention of its current argument that the affiliated Colombian entity should be collapsed into the Duferco entity. As such, the argument was not exhausted before Commerce and should not have been considered by the Trade Court.

## CONCLUSION

Because Boomerang and U.S. Steel failed to exhaust administrative remedies before Commerce, the Trade Court should have dismissed this appeal without reaching the merits. Its failure to do so was an abuse of discretion. Accordingly, we vacate the Trade Court's decision and remand for proceedings in accordance with this opinion.

**VACATED AND REMANDED**

### COSTS

Each party to bear its own costs.