**TOSÇELIK PROFIL VE SAC ENDÜSTRISI A.Ş., and Tosyali Dis Ticaret A.Ş., Cayirova Boru—Sanayi ve Ticaret A.S./Yucel Boru Ithalat–Ihracat ve Pazarlama A.S., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

Slip Op. 17–107
Consol. Court No. 15–00339

United States Court of International Trade.

August 22, 2017

A.Ş. and Tosyali Dis Ticaret A.Ş.; and Cayirova Boru Sanayi ve Ticaret A.S./Yucel Boru Ithalat–Ihracat ve Pazarlama A.S. With him on the briefs was Mark B. Lehnardt, Law Offices of Mark B. Lehnardt, of Washington, DC.

Elizabeth A. Speck, Senior Trial Counsel, Commercial Litigation Branch, U.S. Department of Justice of Washington, DC, for Defendant United States, argued for Defendant. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Claudia Burke, Assistant Director. Of counsel was Lydia C. Pardini, on the brief, and James H. Ahrens II, Attorneys, Office of Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

Roger B. Schagrin, Paul W. Jameson, and Jordan C. Kahn, Schagrin Associates of Washington, DC, for Defendant–Intervenor's Stupp Corp., TMK IPSCO, and Welspun Tubular LLC USA.

Alan H. Price and Robert E. DeFrancesco, III, Wiley Rein, LLP of Washington, DC for Defendant–Intervenor Maverick Tube Corp.

## OPINION AND ORDER

Gordon, Judge

This action involves the U.S. Department of Commerce ("Commerce") antidumping duty investigation covering Welded Line Pipe from the Republic of Korea and the Republic of Turkey. See Welded Line Pipe From the Republic of Turkey, 80 Fed. Reg. 61,362 (Dep't of Commerce Oct. 13, 2015) (final determination of sales at less than fair value) (Final Determination); see also Issues and Decisions Memorandum for Welded Line Pipe from the Republic of Turkey, A–489–822 (Dep't of Commerce Oct. 13, 2015), available at http://enforcement.trade.gov/frn/summary/

David L. Simon, Law Offices of David L. Simon of Washington, DC, argued for Plaintiffs Tosçelik Profil ve Sac Endüstrisi

turkey/2015–25990–01.pdf (last visited this date) ("Decision Memorandum").

Before the court is the USCIT Rule 56.2 motion for judgment on the agency record filed by Plaintiffs Cayirova Boru Sanayi ve Ticaret A.S./Yucel Boru Ithalat–Ihracat ve Pazarlama A.S. (collectively, "Yucel") and Toscelik Profil ve Sac Endustrisi A.S./Tosyali Dis Ticaret A.S. (collectively, "Toscelik"). Plaintiffs Yucel and Toscelick challenge (1) Commerce's treatment of Plaintiffs' duty drawback claims; and Yucel also challenges (2) Commerce's date of sale determination. For the reasons that follow, the court remands the duty drawback determination for further consideration, and sustains Commerce's date of sale determination.

## I. Standard of Review

■ The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383

U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2017). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2017).

## II. Discussion

### A. Duty Drawback

Commerce requests an unopposed remand to address the issue of duty drawback. Def.'s Resp.in Opp'n to Pls' Mot. for J. Upon the Agency R., 14–17, ECF No. 43. As it is unopposed, the court will grant the request. Accord SKF USA Inc. v. United States, 254 F.3d 1022, 1029–30 (Fed. Cir. 2001) (reviewing contested voluntary remand request) ("Where there is no step one Chevron issue, we believe a remand to the agency is required, absent the most unusual circumstances verging on bad faith") (emphasis added).

### B. Date of Sale

■ Yucel challenges Commerce's use of its regulatory presumptive invoice date for the date of sale. The date of sale issue is one with which the court is familiar. See Yieh Phui Enter. Co. v. United States, 35 CIT ——, ——, 791 F.Supp.2d 1319, 1322–24 (2011) (describing in detail Commerce's date of sale regulation); CC Metals and Alloys, LLC v. United States, 40 CIT ——, ——, 145 F.Supp.3d 1299, 1305 (2016).

Commerce "normally" uses invoice date as the date of sale. 19 C.F.R. § 351.401(i). Commerce "may," however, "use a date other than the date of invoice if [Com-

merce] is satisfied that a different date better reflects the date on which the exporter or producer establishes the material terms of sale." Id. An interested party proposing something other than invoice date must demonstrate that the material terms of sale were "firmly" and "finally" established on its proposed date of sale. Antidumping Duties; Countervailing Duties: Final Rule, 62 Fed. Reg. 27,296, 27,348–49 (Dep't of Commerce May 19, 1997) ("Preamble"); see generally Yieh Phui Enter. Co. v. United States, 35 C.I.T. ——, ——, 791 F.Supp.2d 1319, 1322–24 (2011).

Yucel seems to believe that an interested party need only create some doubt about when material terms are set, or raise the issue of the proper date of sale, which then triggers some sort of burden on Commerce to then independently review each and every sale to determine when material terms are set. See Yucel Br. at 12–13 (citing Nucor Corp. v. United States, 33 CIT 207, 612 F.Supp.2d 1264 (2009) ("Nucor")).[1] On a practical level, this strikes the court as naïve. One wonders how Commerce could accomplish that across all reviews or even during an individual review covering hundreds or thousands of sales. And date of sale is just one small component in an otherwise complicated proceeding. Here, for example, Commerce penned a 50–page Decision Memorandum addressing 20 issues. Commerce's date of sale regulation has efficiently avoided the impracticality of Yucel's approach for 20 years by squarely placing the burden on interested parties challenging the presumptive invoice date, to remove any doubt about when material terms are firmly and finally set, so that a reasonable mind has one, and only one,

date of sale choice. See Allied Tube & Conduit Corp. v. United States, 24 CIT 1357, 1371–72, 127 F.Supp.2d 207, 220 (2000) ("Plaintiff, therefore, must demonstrate that it presented Commerce with evidence of sufficient weight and authority as to justify its [date of sale] as the only reasonable outcome."); Yieh Phui Enter. Co. v. United States, 35 CIT ——, ——, 791 F.Supp.2d 1319, 1322–24 (2011); CC Metals and Alloys, LLC v. United States, 40 CIT ——, ——, 145 F.Supp.3d 1299, 1305 (2016).

Suffice it to say, Yucel did not do that here. During the administrative proceeding Yucel argued that contract date was the date of sale for its two U.S. sales. Decision Memorandum at 21–22. Problematically, one of those sales had terms (involving the timing of the letter of credit and delivery date) that varied after contract date. Id. at 24. Petitioners highlighted these differences, and using Yucel's own arguments touting the importance of the opening of the letter of credit, explained to Commerce that material terms varied after contract date. Id. at 22–23. By emphasizing the opening of the letter of credit as the moment at which both parties are bound to perform, Yucel unwittingly undermined its argument that the earlier contract date was the effective date of sale. Petitioners seized on this narrative, highlighting the variance in the letter of credit opening date specified in the contract with when it actually occurred. Commerce reasonably concurred with petitioners' argument that Yucel had failed to establish contract date as the date on which material terms were firmly and finally fixed. Id. at 24–25. Despite the apparent reasonableness of this determination, Yucel nevertheless argues that Commerce erred and

---

1. The court notes that Yucel fails to cite or discuss Nucor's subsequent history, which the court in Yieh Phui explained leaves Nucor with no persuasive weight. Yieh Phui, 35 CIT at ——, 791 F.Supp.2d at 1324–25 (2011).

should have conducted further analyses as to whether contract date might have been the date of sale, Conf. Br. in Supp. of Mot. for J. on Agency Rec., ECF. No. 33 (May 27, 2016) ("Yucel Br.") at 12–17, or at least determined date of sale per transaction and used contract date for one of the sales (an argument Yucel failed to exhaust before Commerce), id. at 17–18, or that Commerce should have considered whether the opening of the letter of credit might have been the correct date of sale, id. at 16 n.5. Yucel also makes an argument about fluctuating exchange rates that they failed to exhaust before Commerce. Id. at 18–21; see also Def.'s Resp. in Opp'n to Pls.' Mot. for J. on Agency R., ECF. No. 43 (Sept. 23, 2016) at 11, 13–14; see also Scheduling Order at 3, ECF No. 27 (Mar. 10, 2016) ("please make sure you have exhausted your administrative remedies by presenting your arguments to the agency in the first instance.").

Yucel itself is apparently uncertain about when material terms were firmly and finally fixed, arguing to the court that Commerce should have considered whether the opening of the letter of credit was a suitable date of sale (despite no interested party arguing for that date of sale at the administrative level). Yucel Br. at 16 n.5. Conceding that there may be multiple possible dates of sale is a curious stance given a regulatory standard that requires Yucel to have established one, and only one, date of sale. Suggesting multiple possibilities, as Yucel does, just confirms for the court the abiding wisdom of a date of sale regulation that defaults to invoice date precisely because this sort of uncertainty and complexity is prevalent in most industries. Preamble, 62 Fed. Reg. at 27,348–49 ("[I]n most industries, the negotiation of a sale can be a complex process. . . . In fact, it is not uncommon for the buyer and seller themselves to disagree about the exact date on which the terms became final. However,

for them, this theoretical date usually has little, if any, relevance. From their perspective, the relevant issue is that the terms be fixed when the seller demands payment. . . .").

██ Yucel argues that even if Commerce correctly determined that Yucel failed to establish that contract date was the date of sale for the transaction with changing terms, Commerce nevertheless should have used contract date for the other transaction in which all terms remained the same. Problematically for Yucel, during the proceeding Yucel argued that Commerce should apply one date of sale (contract date) to both of its transactions. Yucel did not argue or suggest that Commerce should assign date of sale for its U.S. sales on a per transaction basis. The time to do so was before Commerce, and make whatever arguments supported Yucel's proposed per transaction approach. Commerce could then have addressed those arguments. Because Yucel did not raise the issue, Commerce never considered it, and the issue is not in a posture that the court can review. This is Yucel's fault, having failed to exhaust its administrative remedies. See 28 U.S.C. § 2637(d); Boomerang Tube LLC v. United States, Nos. 2016–1554, 2016–1561, 856 F.3d 908 (Fed. Cir. May 8, 2017); Corus Staal BV v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007). Yucel also failed to present its arguments about the fluctuating exchange rate to Commerce in the first instance, and failed to exhaust these arguments as well. Id.

To prevail before the court, Yucel needed to demonstrate that it presented Commerce with one and only one reasonable choice for date of sale—that the material terms were firmly and finally fixed on its proposed contract date. Yucel failed to do

that here, accordingly, the court sustains Commerce's date of sale determination.

### III. Conclusion

In accordance with the foregoing, it is hereby

**ORDERED** that the Final Determination is sustained as to Commerce's date of sale determination; it is further

**ORDERED** that this action is remanded to Commerce to reconsider its treatment of duty drawback; it is further

**ORDERED** that Commerce shall file its remand results on or before November 6, 2017; and it is further

**ORDERED** that, if applicable, the parties shall file a proposed scheduling order with page/word limits for comments on the remand results no later than seven days after Commerce files its remand results with the court.