NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**POSCO,**
*Plaintiff*

**v.**

**UNITED STATES,**
*Defendant*

**SSAB ENTERPRISES LLC, ARCELORMITTAL USA LLC,**
*Intervenors-Defendants*

**NUCOR CORPORATION,**
*Intervenor-Defendant-Appellant*

-------------------------------------------------

**NUCOR CORPORATION,**
*Plaintiff-Appellant*

**SSAB ENTERPRISES LLC, ARCELORMITTAL USA LLC,**
*Intervenors-Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**POSCO,**
*Intervenor-Defendant*

————————————

2022-1525

————————————

Appeal from the United States Court of International Trade in Nos. 1:17-cv-00137-GSK, 1:17-cv-00156-GSK, Judge Gary S. Katzmann.

————————————

Decided:  October 23, 2023

————————————

ROBERT E. DEFRANCESCO, III, Wiley Rein, LLP, Washington, DC, argued for plaintiff-appellant.  Also represented by STEPHANIE MANAKER BELL, TESSA V. CAPELOTO, ALAN H. PRICE, ADAM MILAN TESLIK, MAUREEN E. THORSON, ENBAR TOLEDANO, CHRISTOPHER B. WELD.

EMMA EATON BOND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY; WILLIAM MITCHELL PURDY, Office of the Chief Counsel for Trade Enforcement and Compliance, United States Department of Commerce, Washington, DC.

————————————

Before CHEN, HUGHES, and CUNNINGHAM, *Circuit Judges*.

HUGHES, *Circuit Judge.*

Appellant Nucor Corporation[1] appeals a decision from the United States Court of International Trade sustaining the Department of Commerce's remand determination that the government-run Korean Electric Power Corporation did not provide electricity to South Korean steel producers for less than adequate remuneration, and accordingly did not require a countervailing duty. Nucor Corporation contends that the agency's determination is contrary to our holding in *POSCO v. United States*, 977 F.3d 1369 (Fed. Cir. 2020), where we held that the agency erred by using a preferential-rate analysis that was eliminated by the Uruguay Round Agreements Act. Because we agree with the trial court that the agency's remand determination complies with our decision in *POSCO*, we affirm.

I

A

Under 19 U.S.C. § 1671(a), if a foreign government subsidizes the production of goods abroad, the United States can apply a countervailing duty when those goods are imported into the United States. This duty is intended to protect American companies from unfair competition. *See Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1349 (Fed. Cir. 2006). The Department of Commerce applies a countervailing duty when it determines the foreign government conferred a benefit to the foreign producer. 19 U.S.C. § 1677(5). Relevant here, if the foreign government provides a benefit in the form of a financial contribution for less than adequate remuneration, that can be the basis for applying a countervailing duty. 19 U.S.C. § 1677(5)(D)–(E).

---

[1] Appellee POSCO, a South Korean-based steel company, submitted a letter to this court indicating its intent not to participate in the appeal and did not submit any briefing. Dkt. 18.

Before Congress enacted the Uruguay Round Agreements Act (URAA) in 1994, the agency defined a "subsidy" as a "preferential rate" in the context of a foreign government providing goods and services to a foreign producer, under 19 U.S.C. § 1677(5)(A)(ii)(II) (1988). The URAA introduced the less-than-adequate remuneration standard for defining a benefit: "if such goods or services are provided for less than adequate remuneration, and in the case where goods are purchased, if such goods are purchased for more than adequate remuneration." 19 U.S.C. § 1677(5)(E)(iv). The statute states that "the adequacy of remuneration shall be determined in relation to prevailing market conditions for the good or service being provided or the goods being purchased in the country which is subject to the investigation or review." *Id.* Additionally, "[p]revailing market conditions include price, quality, availability, marketability, transportation, and other conditions of purchase or sale." *Id.*

After the URAA was passed, the agency requested public comments on how to develop a methodology for determining the adequacy of remuneration. This process led to a three-tiered methodology for determining adequate remuneration. Under the third tier of this methodology, which is relevant here, the agency "measure[s] the adequacy of remuneration by assessing whether the government price is consistent with market principles." 19 C.F.R. § 351.511(a)(2)(iii).

Simply put, the "preferential rate" analysis and the "less-than-adequate remuneration" analysis approach the question of what constitutes a "benefit" from two angles. The "preferential rate" approach considers whether, when compared to other consumers receiving the same good or service, the government is providing that same good or service to the foreign producer for a more favorable rate. And the "less than adequate remuneration" standard looks at whether the foreign producer is receiving the good or

service in accordance with fair market principles, with less emphasis on what other consumers are getting or paying.

B

In South Korea, electricity is provided through the government-owned Korean Electric Power Corporation (KEPCO). All electricity generated in Korea, including from private generators, must be sold to KEPCO through a wholesale market known as the Korean Power Exchange (KPX). KPX is wholly owned by KEPCO and its six generation subsidiaries.

Nucor Corporation (Nucor) is a domestic producer of different types of steel. Nucor, along with other domestic steel producers, petitioned the agency in April 2016 to impose countervailing duties on cut-to-length steel plates from several countries, including South Korea. Nucor alleged that KEPCO was providing South Korean steel producers with electricity at less than adequate remuneration. Because KEPCO is largely government-owned and controlled, Nucor asserted that KEPCO is an "authority" that provides a "financial contribution" constituting a "benefit" to Korean steel producers. In its final determination, for the period covering January through December 2015, the agency determined that KEPCO did not provide electricity for less than adequate remuneration, and therefore, a countervailing duty was not required. This determination was affirmed by the Court of International Trade, which found that the agency's determination was supported by substantial evidence.

This case, and several similar cases involving KEPCO, were appealed to this court, and we addressed those cases in *POSCO*. 977 F.3d at 1376. There, citing *Nucor Corp. v. United States*, 927 F.3d 1243, 1251–52 (Fed. Cir. 2019), we held that the agency's benefit analysis was not supported by substantial evidence because it relied on pre-URAA preferential-rate standards that were "inconsistent with the adequate-remuneration standard under § 1677(5)(E)(iv)." *Id.* We also found that the agency did not

sufficiently investigate or evaluate KPX's generation costs or other markers of prevailing market conditions, and thus we held that its determination was not supported by substantial evidence. *Id.* at 1376–78. We vacated and remanded the case to the trial court, and the trial court in turn remanded to the agency.

In its remand determination, the agency continued to find that KEPCO did not provide electricity for less-than-adequate remuneration. The agency explained the steps it took to investigate whether the "electricity generation cost paid by KEPCO through KPX reflected the full cost of generating electricity." J.A. 23262. The agency stated that it had "requested information from [the government of South Korea] to confirm the Korean electricity market structure and that the electricity generation cost paid by KEPCO through KPX reflected the full cost of generating electricity, including an amount of investment return." J.A. 23262. Based on its additional analysis of the record, the agency determined that "the electricity generation cost paid by KEPCO reflected the full costs to KPX of generating electricity," J.A. 23273, and that the record evidence "demonstrated that there was no benefit in the pricing of electricity between KPX and KEPCO." J.A. 23263. The agency then explained that its analysis into KEPCO's industrial tariff classifications, as well as the costs paid through KPX, demonstrated that it had considered prevailing market conditions beyond a pre-URAA preferential rate analysis. And for those reasons, the agency continued to find that KEPCO did not provide electricity for less than adequate remuneration.

The trial court sustained the agency's remand determination, finding that the agency's additional analysis of the record and revised findings were consistent with our holding in *POSCO.* Specifically, the trial court found that "Commerce did not rely only on the presence or absence of [price] discrimination to conclude that KEPCO did not provide electricity to respondents for [less than adequate

remuneration]," but instead "analyzed *both* the relationship between KEPCO's standard pricing mechanism and its cost of production of electricity . . . *and* the presence or absence of preferential pricing." J.A. 15. And because the agency's determination considered whether Korean steel producers received a benefit for less than adequate remuneration, the trial court held that its analysis was in accordance with the post-URAA statutory requirements.

Nucor now appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II

We review the decisions of the Court of International Trade de novo, applying the same standard of review used by the trial court in reviewing the administrative record before the agency. *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017). This court will uphold the agency's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013). "The specific factual findings on which [the] agency relies in applying its interpretation are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009) (citing 5 U.S.C. § 706(2)(E)).

## III

Nucor argues that the trial court erred in sustaining the agency's remand redetermination because part of the agency's analysis involved a preferential rate analysis, and thus runs contrary to our holding in *POSCO* and *Nucor*. Nucor further argues that the agency's decision is unsupported by substantial evidence because it did not adequately evaluate KPX's pricing and its impact on the Korean electricity market. We disagree and now hold that

the agency's remand determination complies with our precedent.

In *POSCO*, we held that the agency's "reliance on a preferential-rate standard" is inconsistent with the post-URAA adequate remuneration analysis required by 19 U.S.C. § 1677(5)(E)(iv). 977 F.3d at 1376. But we did not hold that the agency may *never* consider the presence or absence of preferential pricing as part of its adequate remuneration analysis. *See id.* ("Commerce cannot rely on price discrimination *to the exclusion* of a thorough evaluation of fair-market principles . . . . ") (emphasis added). Unlike in *POSCO*, here, the agency explained how it considered prevailing market principles in its analysis of whether KEPCO was providing electricity to respondents for less than adequate remuneration. As the trial court explained, the agency considered "the relationship between KEPCO's standard pricing mechanism and its costs of production of electricity" as well as "whether the tariff charged to the respondent failed to cover cost of production plus a profitable return on the investment." J.A. 15 (internal quotations omitted). This analysis satisfies the statutory and regulatory requirement to consider "prevailing market conditions." 19 U.S.C. § 1677(5)(E)(iv); 19 C.F.R. § 351.511(a)(2)(iii). And accordingly, this analysis is consistent with our holding in *POSCO* that the agency must evaluate prevailing market principles in order to determine the adequacy of remuneration. Thus, the trial court did not err in sustaining the agency's remand determination.

Furthermore, the agency's remand determination is supported by substantial evidence because it sufficiently investigated KPX's generation costs in its analysis, as we instructed in *POSCO*. The agency explicitly requested information on KPX in its questionnaire to the Government of Korea, including both pricing and generation costs. The agency sought this information to "confirm that electricity

generation costs paid by KEPCO reflected the full cost to KPX of generating electricity, including an amount of investment return." J.A. 19. The agency provided sufficient details about KPX's cost recovery with respect to its listed unit price and used this information to determine that the "electricity prices established by KPX are consistent with prevailing market conditions," meaning that there was no benefit conferred. J.A. 19. This information was not evaluated by the agency in its initial determination, which was the basis for our holding in *POSCO* that the agency's determination was not supported by substantial evidence. However, because the agency has now specifically investigated KPX's pricing and generation costs, its determination that there was no benefit in the pricing of electricity between KPX and KEPCO is supported by substantial evidence.

## IV

We have considered the remainder of Nucor's arguments and find them unpersuasive. Accordingly, we affirm the Court of International Trade's holding that the Department of Commerce's determination on remand both satisfies our requirements set forth in *POSCO* and is supported by substantial evidence.

**AFFIRMED**