# United States Court of Appeals for the Federal Circuit

---

**UNITED STATES STEEL CORPORATION,**
*Plaintiff-Appellant*

**NUCOR CORPORATION,**
*Plaintiff*

**v.**

**UNITED STATES, BLUESCOPE STEEL (AIS) PTY LTD., BLUESCOPE STEEL LTD, BLUESCOPE STEEL AMERICAS, INC.,**
*Defendants-Appellees*

---

2022-2078

---

Appeal from the United States Court of International Trade in No. 1:20-cv-03815-RKE, Senior Judge Richard K. Eaton.

---

Decided: April 4, 2024

---

SARAH E. SHULMAN, Cassidy Levy Kent (USA) LLP, Washington, DC, argued for plaintiff-appellant. Also represented by YOHAI BAISBURD, THOMAS M. BELINE, CHASE DUNN, JAMES EDWARD RANSDELL, IV.

EMMA EATON BOND, Commercial Litigation Branch, Civil Division, United States Department of Justice,

Washington, DC, argued for defendant-appellee United States. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY; SPENCER NEFF, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

DANIEL L. PORTER, Curtis, Mallet-Prevost, Colt & Mosle LLP, Washington, DC, argued for defendants-appellees BlueScope Steel (AIS) Pty Ltd., BlueScope Steel Ltd, BlueScope Steel Americas, Inc. Also represented by JAMES BEATY, CHRISTOPHER A. DUNN, JAMES P. DURLING.

————————————

Before MOORE, *Chief Judge*, HUGHES and STARK, *Circuit Judges*.

HUGHES, *Circuit Judge*.

United States Steel Corp. appeals a decision from the United States Court of International Trade sustaining the Department of Commerce's determination that Australian producer and exporter of hot-rolled steel, BlueScope Steel (AIS) Pty Ltd., did not reimburse its affiliated U.S. importer, BlueScope Steel Americas, Inc., for antidumping duties. Because we agree with the trial court that the agency's determination is supported by substantial evidence and is otherwise in accordance with law, we affirm.

I

A

Under the Tariff Act of 1930, as amended, the Department of Commerce is authorized to administer the antidumping statute. *See* 19 U.S.C. §§ 1673, 1677(1). The purpose of the antidumping statute is to protect domestic industries from injury caused by foreign manufactured goods that are sold in the United States at prices below the fair market value of those goods. *See U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010). In

administering the statute, the agency will conduct investigations and assess antidumping duties where it determines that foreign goods are being sold in the United States at less-than-fair value. 19 U.S.C. § 1673. If requested by an interested party, the agency must also conduct an annual review of a previously issued antidumping duty order to determine the amount of dumping and the duties owed for the period of review. *Id.* § 1675(a)(1)(B), (2)(A). During the review, the agency calculates a "dumping margin" by comparing the price at which the merchandise is sold in the United States (export price) to a "normal value" benchmark. *See id.* §§ 1675(a)(2)(A)(ii),1677(35)(A). Where a domestic importer is affiliated with the foreign exporter, the agency will use "constructed export price," defined as the price at which the merchandise is first sold to a non-affiliated purchaser, with adjustments made to account for expenses incurred by the affiliated seller. *Id.* § 1677a(b), (d)(1).

When calculating export price or constructed export price, the agency must also account for additional factors, including whether the exporter has reimbursed the importer for antidumping duties owed on the merchandise. *See* 19 C.F.R. § 351.402(a), (f). If the agency finds that the importer has been reimbursed for antidumping duties, it will subtract the amount of reimbursement from the calculated export price, ultimately leading to a higher dumping margin and a larger duty owed. *Id.* § 351.402(f)(1)(i) ("In calculating the export price (or the constructed export price), the Secretary will deduct the amount of any antidumping duty or countervailing duty which the exporter or producer . . . [p]aid directly on behalf of the importer; or . . . [r]eimbursed to the importer."). The agency requires importers to file a certification with United States Customs and Border Protection stating whether the importer has been reimbursed or refunded by the manufacturer, producer, seller, or exporter for all or part of the antidumping duties assessed. *Id.* § 351.402(f)(2)(i).

B

This appeal arises out of the Department of Commerce's second administrative review of the existing antidumping duty order on hot-rolled steel flat products from Australia, covering a period of review from October 1, 2017 to September 30, 2018. Defendants-Appellees BlueScope Steel (AIS) Pty Ltd., BlueScope Steel Ltd, and BlueScope Steel Americas, Inc. (collectively, BlueScope) are all affiliated parties that comprise the only hot-rolled steel producer and exporter in Australia. BlueScope Steel Ltd (hereinafter, BSL) is the ultimate corporate parent company. BlueScope Steel (AIS) Pty Ltd. (hereinafter, AIS) is a wholly owned subsidiary of BSL and is the actual producer and exporter of BlueScope hot-rolled steel. BlueScope Steel Americas, Inc. (hereinafter, BSA) is the affiliated United States importer. BSL also owns a 50% controlling interest in Steelscape LLC, an affiliated downstream U.S. customer that receives the majority of the imported steel.

For exports of AIS steel that are destined for Steelscape, AIS first invoices BSA, and in a "back-to-back transaction," BSA then invoices the ultimate customer, Steelscape. BlueScope Br. 4. The shipment of the physical merchandise goes directly from AIS to Steelscape.

Prior to the agency's release of its preliminary findings in the 2017–2018 administrative review, Plaintiff-Appellant United States Steel Corp. (hereinafter, U.S. Steel) alleged that BlueScope had reimbursed BSA for the antidumping duties it incurred when importing AIS steel. U.S. Steel argued to the agency—and now argues to us on appeal—that BlueScope engaged in antidumping duty reimbursement by failing to charge BSA a predetermined "formula price" and instead charged a price that accounted for estimated antidumping duties owed by BSA. The "formula price" at issue in this case is housed in a supply agreement between BlueScope entities. Because the parties offer

incompatible interpretations of the Supply Agreement and the entities to which it applies, we present each party's recitation of the underlying facts in turn.

1

BlueScope explains that the Supply Agreement at issue is a "Substrate Supply Agreement" among BSL, BSA, and Steelscape. BlueScope Br. 6. BlueScope states:

> The Agreement sets the price that *BSA charges Steelscape* for the merchandise, according to a formula using two published hot-rolled price indices. Article 5.1 of the Supply Agreement uses this formula to determine the price of the purchase order ("PO") that Steelscape submits to BSA. Article 3.5 of the Supply Agreement states that "Steelscape will submit two POs {purchase orders} to BSA for the total amount of HRC {hot-rolled coil} in the Steelscape Order for each supply month . . . [.]" Article 6.1 of the Agreement further sets forth invoice the price [sic] that "BSA will provide to Steelscape." That price is a delivered, duty-paid price—a price that includes both the duties and the cost of delivering the merchandise to Steelscape.

BlueScope Br. 6–7 (internal citations omitted). In sum, BlueScope asserts that while the Supply Agreement controls the invoice price between BSA and Steelscape, it does not set forth the "transfer price" for the transaction between AIS and BSA. Instead, BlueScope reports that it calculates the transfer price between AIS and BSA by starting with the formula price to Steelscape and subtracting the estimated antidumping duties that BSA will owe. To support its explanation of the pricing methodology, BlueScope submitted evidence into the agency record during review, including a questionnaire response discussing the methodology, a copy of the Supply Agreement, and a series of sales traces showing the actual amounts paid by AIS to BSA and then BSA to Steelscape in previous transactions.

BlueScope also submitted evidence showing that BSA actually paid the antidumping duty amounts owed and filed the certifications of nonreimbursement that are required under 19 C.F.R. § 351.402(f)(2)(i). J.A. 25.

2

Notwithstanding BlueScope's proffered explanation of its own Supply Agreement, U.S. Steel has adopted the position that BSA—not Steelscape—is required to pay the Supply Agreement's formula price for hot-rolled steel. U.S. Steel points to several record documents as support for this contention. The first is the Supply Agreement itself, which BlueScope submitted in response to the agency's request that BlueScope "[e]xplain how you determined the net unit transfer price." J.A. 114. In responding to that question, BlueScope provided the Supply Agreement and stated that the agreement governed "[t]he price of material sold by BlueScope to BSA and subsequently to Steelscape." J.A. 114. The second document is another questionnaire response that provides a worksheet "demonstrat[ing] the application of the transfer price formula" for a sale "made by AIS on invoice to BSA and destined for Steelscape." J.A. 1458. U.S. Steel also references a third questionnaire response where BlueScope reported that "BlueScope issues an invoice to BSA for the merchandise according to the amount shipped and the formula price," and further that "there is no negotiation of sales prices or terms of sale between Steelscape and BSA or BSA and BlueScope." J.A. 97.

Because U.S. Steel argues that BSA was required to pay the formula price and because "the pricing formula does not establish a basis to deduct antidumping duties," U.S. Steel concludes that BlueScope's practice of calculating the transfer price between AIS and BSA by subtracting estimated duties from the formula price is impermissible reimbursement of antidumping duties. Appellant's Br. 8–9, 12 ("That BlueScope lowered the price of the [hot-rolled steel] by antidumping duties outside of its pricing formula

is evidence of reimbursement."). In response, BlueScope argues that "nothing in the Substrate Supply Agreement sets forth the invoice price that foreign producer AIS is to charge its related party importer BSA for the merchandise," and therefore, "AIS cannot have 'lowered' an invoice price when that invoice price is nowhere set forth in the relevant agreements between the parties." BlueScope Br. 9.

C

In its preliminary findings, the agency rejected U.S. Steel's allegations of reimbursement, stating that its preliminary analysis of the record "[did] not demonstrate that BlueScope reimbursed its U.S. affiliate." J.A. 48. Because the agency did not find evidence of reimbursement, it did not adjust BlueScope's U.S. gross unit price to account for such reimbursement. In its final results, the agency again determined that BSA was not reimbursed for antidumping duties deposited during the period of review. The agency focused on record evidence showing that BSA filed the requisite certifications of nonreimbursement when it imported subject merchandise and stated that "there [was] no record evidence to contradict BSA's statements in these certifications." J.A. 25. In fact, the agency found that BlueScope submitted record evidence to support the statements of nonreimbursement and further that the information demonstrated that BSA actually paid the requisite cash deposit of antidumping duties. The agency determined that BlueScope's explanation of the Supply Agreement "showed that these parties have a long-standing supply agreement which set the transfer prices of subject merchandise *to Steelscape* according to a formula." J.A. 26 (emphasis added). Turning to BlueScope's method of calculating the transfer price between AIS and BSA, the agency stated:

> We disagree with the petitioners that record evidence establishes that AIS deducted [antidumping] duties when setting the price to BSA. Rather, the

> information provided by BlueScope demonstrates that BSA paid [antidumping] duties on its imports of subject merchandise, and it passed these duties on to Steelscape as part of the transfer price [charged] to it. Despite the petitioners' claim, this information does not show that AIS deducted [antidumping] duties from the price that it charged to BSA; to the contrary, it simply shows the calculation of the transfer price to the U.S. customer, albeit an affiliated one.

J.A. 26 (footnote omitted). The agency also addressed U.S. Steel's contention that a finding of no reimbursement was inconsistent with previous agency decisions. The agency explained that because there was "no evidence that AIS deducted the [antidumping] duties paid by BSA from the transfer price charged to BSA or otherwise reimbursed BSA for those duties," its determination that the reimbursement regulation did not apply was consistent with previous cases and past practice. J.A. 27 (citing cases where the agency clarified that "reimbursement, within the meaning of the regulation, takes place between affiliated parties if the evidence demonstrates that the exporter directly pays antidumping duties for the affiliated importer or reimburses the importer for such duties").

Following the agency's final decision, U.S. Steel filed a complaint in the United States Court of International Trade challenging the decision. *U.S. Steel Corp. v. United States*, 578 F. Supp. 3d 1323 (Ct. Int'l Trade 2022). The trial court sustained the agency's decision, finding that it was supported by substantial evidence and was otherwise in accordance with the law. *Id.* at 1325. The trial court noted that "[t]he Exporter's deduction of estimated antidumping duties from the Importer's invoice price, on its own, is unremarkable when viewed in the context of the record." *Id.* at 1331. The court further explained that "[t]ogether with the non-reimbursement evidence in the form of the certificate filed by the Importer, and evidence

that the Importer paid duties owed on the subject steel, the court concludes it was not unreasonable for Commerce to find that the reimbursement regulation did not apply here." *Id.* The trial court also rejected U.S. Steel's argument that the agency erred as a matter of law by failing to apply its reimbursement regulation, stating, "Plaintiffs' argument that Commerce unlawfully ignored its 'practice' of considering the lowering of an invoice price to be 'indirect reimbursement' under its regulations is meritless." *Id.* at 1331–32. Like the agency, the trial court reasoned that in previous cases concerning allegations of antidumping duty reimbursement between affiliated parties, the agency has required a showing of something more than a transfer of funds between parties: there must be evidence that the exporter directly paid the duties or reimbursed the importer for such duties. *Id.* at 1332–33. The trial court then concluded that because there was no evidence of such reimbursement—direct or indirect—it was "unconvinced by Plaintiff's argument that Commerce has departed from an established practice." *Id.* at 1333.

U.S. Steel now appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II

We review the decisions of the Court of International Trade de novo, applying the same standard of review used by the trial court in reviewing the administrative record before the agency. *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017). This court will uphold the agency's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013).

A decision is supported by substantial evidence if the evidence amounts to "more than a mere scintilla" and "a reasonable mind might accept [it] as adequate to support a conclusion.'" *Ad Hoc Shrimp Trade Action Comm. v. United*

*States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 217 (1938)). Our review "is limited to the record before Commerce in the particular proceeding at issue and includes all evidence that supports and detracts from Commerce's conclusion." *Id.* Further, the Department of Commerce's findings "may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." *Id.*

## III

On appeal, U.S. Steel argues that the trial court erred in sustaining the agency's finding that BlueScope did not engage in antidumping duty reimbursement because such a decision is not supported by substantial evidence. U.S. Steel further argues that the agency erred as a matter of law when it declined to apply its antidumping duty regulation to the facts of the case. We disagree and hold that the agency's determination was supported by substantial evidence and was otherwise in accordance with law.

During the review, the agency based its determination on a number of record documents, including the nonreimbursement certificate filed by BSA, the Supply Agreement, the sales trace of previous transactions amongst the parties, and documents showing that BSA had paid the owed duties to United States Customs and Border Protection. The agency's Final Decision Memorandum and the Final Results Analysis Memorandum both demonstrate that the agency had a clear understanding of BlueScope's transfer price methodology, including the ways that BlueScope factored estimated antidumping duties into its calculation. *See* J.A. 26, 4103. Even after weighing this evidence, the agency found that the transfer pricing methodology did not constitute reimbursement. As the trial court explained, the agency determined that "it would have been unreasonable for the Exporter to include antidumping duties in the price charged to the Importer because the Exporter itself was not responsible for those duties." *U.S. Steel*, 578 F. Supp. 3d at

1327. The record indicates that the evidence before the agency was adequate to support the agency's finding of nonreimbursement. Furthermore, the fact that U.S. Steel may be able to point to several instances in the record where BlueScope submitted questionnaire responses that could fairly be read to contradict its overall narrative regarding the Supply Agreement, *see* Reply Br. 2–3, is not sufficient to render the agency's decision unreasonable or not based on substantial evidence.

Because we find that substantial evidence supports the agency's determination that BlueScope did not engage in reimbursement, we are also not persuaded by U.S. Steel's argument that the agency erred as a matter of law in failing to apply its reimbursement regulation. Like the trial court, in the absence of evidence demonstrating that BSA was reimbursed for the duties it paid, we find no departure from an established practice by the agency that would constitute reversible error. *See U.S. Steel*, 578 F. Supp. 3d at 1333.

IV

We have considered the remainder of U.S. Steel's arguments and find them unpersuasive. Accordingly, we affirm the Court of International Trade's decision sustaining the Department of Commerce's determination that BlueScope did not engage in antidumping duty reimbursement within the meaning of the statute.

**AFFIRMED**